UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| THE NATURE CONSERVANCY | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | NO. 2:07-CV-122 |
| | ) | |
| DON BROWDER, *ET AL.* | ) | |

**MEMORANDUM OPINION AND ORDER**

On May 30, 2007, the Plaintiff, The Nature Conservancy ("TNC"), filed a complaint, [Doc. 1], in this Court against the Shady Valley Watershed District ("District"), Unformed Watershed District ("Unformed District"), Don Browder, Vance Gentry, Earl B. Howard, Jr., Gerald Buckles, Wayne Duncan, Garry Dunn, Earl B. Howard, Sr., and Randy McQueen, seeking first a declaratory judgment that District has been dissolved by operation of law, that TNC's property in Johnson County, Tennessee, is free from any and all easements held by the Defendants, and that the Unformed District does not hold any property rights once held by the dissolved District. Second, TNC seeks to quiet the title to its property and for the Johnson County Register of Deeds to reform all deeds and remove any and all easements once held by the District. Third, the Plaintiff alleges that the Defendants violated the Tennessee Consumer Protection Act ("TCPA"), *see* T.C.A. § 47-18-104(27) (2008), and fourth, the Plaintiff asserts a negligence per se claim against the individual Defendants. The basis for subject matter jurisdiction is diversity, *see* 28 U.S.C. § 1332(a) (2008).

On June 7, 2007, the parties agreed to a preliminary injunction, [Doc. 27], enjoining the Defendants and their agents from coming onto TNC's land and from causing damage to TNC's property. Before filing an answer, the Defendants filed two motions to dismiss, [Docs. 32 and 34]. In the first motion, [Doc. 32], the subject of this opinion, the Defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and (b)(6), failure to state a claim upon which relief can be granted, regarding all four claims.

The Defendants first argue that this Court lacks subject matter jurisdiction because: 1) the Plaintiff lacks standing to sue, contending that the declaratory judgment and quiet title actions can only be brought as *quo warranto* claims; 2) "the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create an independent basis for subject matter jurisdiction";[1] and 3) the amount in controversy is not met.[2] Secondly, the Defendants argue that the complaint should be dismissed because 1) the "Plaintiff cannot prove that the District is no longer in existence," and 2) the TCPA and negligence per se claims should be dismissed, "thereby destroying any basis for a damage claim exceeding the amount of $75,000."

I. FACTS

---

[1] In TNC's Response to Defendants' motion to dismiss [Doc. 40], the Plaintiff states, "The Conservancy does not contend that 28 U.S.C. § 2201 creates an independent basis for the Court's exercise of its subject matter jurisdiction."

[2] The Defendants do not challenge the diversity of citizenship.

The complaint states that in September 1958, the directors of a proposed Shady Valley Watershed District filed organizing papers to form a watershed district under the Tennessee Watershed District Act of 1955, *see* T.C.A. § 69-6-101, *et seq*., and received its charter in 1960. The District issued a work plan for "improvements" to Beaverdam Creek and its tributaries. In June 1964, property owners along Beaverdam Creek and its tributaries granted the District easements to execute the work plan. The complaint further outlines the District's purpose according to statute. Its statutory powers include the power to:

> construct any drainage works or improvements; to construct any works or improvements for the control, retention, diversion, or utilization of water; retard runoff of water and soil erosion; construct ditches, channel improvements, dikes, levees, flood prevention reservoirs, water conservation reservoirs, or irrigation reservoirs or facilities, parks, and other recreational facilities.

Each easement granted stated that the purpose of the easement was

> for or in connection with the construction, operation, maintenance and inspection of the following described works of improvement: Channel Improvement of Beaverdam Creek and its tributaries, as described in the Watershed Work Plan for the Shady Valley Watershed Project, consisting of clearing, enlargement, excavation, placing of waste excavation material, and installation of mitigation (fish and wildlife conservation) measures, either or all.

The complaint alleges that the District completed its work plan prior to 1980, and further alleges that because the District has failed to exercise its corporate powers for

3

a period of ten years, it is dissolved by operation of law.

The complaint further states that TNC "has been actively involved with land conservation [in Johnson County, where the work plan was executed by the District] since 1978 and "actively acquiring land [in the same area] since 1994" for the purpose of preserving "existing bogs and to restore bogs that have been drained, which in turn provide habitat for rare and threatened species."[3] Moreover, the complaint alleges that TNC has established wetland mitigation banks at its bogs, and the banks allow TNC to "sell wetland mitigation credits." In addition, the complaint states that TNC received a letter dated March 12, 2007, from Defendant Gentry, writing for "The Shady Valley Watershed District board of directors," which requested TNC to

> immediately unblock all Shady Valley Watershed laterals located on Shady Valley Nature Conservancy properties. The Shady Valley Watershed Board will inspect the laterals located on Shady Valley Nature Conservancy properties no later than May 12, 2007 to ensure that blockages to the laterals have been removed.

The complaint alleges four causes of action: 1) declaratory judgment that the District has been dissolved by operation of law, that the District's easements are, thus, extinguished, and that the Unformed District does not hold any property rights in the easements; 2) quiet title action declaring TNC's property free and clear of any clouds and for the Johnson County Register of Deeds to reform the deeds; 3) violation of the

---

[3] Much, if not all, of the property acquired by TNC was purchased subject to the easements in favor of the District, which had been granted by previous property owners.

TCPA, stating that TNC is a "consumer of real property" and that the Defendants "engaged in acts and practices deceptive to Plaintiff"; and 4) that the individual Defendants committed criminal impersonation, "as defined by Tenn. Code Ann. § 39-16-30," thus, "giving rise to a finding of negligence *per se*, in this instance, tortious impersonation."

The complaint also states, "This action involves an amount in controversy exceeding $75,000.00, exclusive of interest and costs, and between citizens of different States. This Court's subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a). . . ." Elsewhere, it states that TNC paid $1.7 million for ten parcels of land, the subject of this litigation. Damages are mentioned only two other times in the complaint. Under the TCPA claim, the complaint states, "As a consequence of Defendants' deceptive acts and practices, Plaintiffs have been damaged by such fraud in an amount to be shown at trial," and under the negligence per se claim, it states, "Defendants' negligence per se has proximately caused Plaintiff harm for which Defendants are liable in an amount to be proven at trial."

## II. AMOUNT IN CONTROVERSY

### A. Standard of Review

A challenge to the amount in controversy attacks subject matter jurisdiction on the face of the complaint; thus, this Court must consider the complaint's allegations as true, *see RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th

Cir. 1996). In addition, to determine whether the amount in controversy has been satisfied, the Court must examine the complaint at the time it was filed. *St. Paul Mercury Indemnity Co. v. Redcap Co.*, 303 U.S. 283, 291 (1938). "[T]he amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Id.* at 294.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Furthermore, the Sixth Circuit has further elaborated on this rule in an unpublished opinion in *LoDal, Inc., v. Home Insurance Company of Illinois*, 1998 WL 393766, * 2 (6th Cir. June 12, 1998) (citing *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 299 (2d Cir. 1975), and referencing *Hunt*, 432 U.S. at 347). The Sixth Circuit stated that, "[w]here a party seeks a declaratory judgment, 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'" *Id.*

B. Analysis

The Defendants argue that the complaint does not specify damages that exceed $75,000.00. They state that the complaint only alleges "damages" under the TCPA claim, and they argue that under the TCPA the Plaintiff must suffer "'an ascertainable loss of money or property' for a private action to lie. T.C.A. § 47-18-109(a)(a)."

6

Further, the Defendants contend that the negligence per se action only alleges "unspecified 'harm,'" and finally, the Defendants claim that the complaint does not allege any damage to TNC's property, arguing, in essence, that the lawsuit is "solely" about whether the District exists so TNC can claim title free of any clouds.

TNC argues that because the amount in controversy is determined "'from the perspective of the plaintiff, with a focus on the economic value of the rights [the plaintiff] seeks to protect,'" *see Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007), and because TNC paid $1.7 million for the property for the purpose of "restoring, constructing, and maintaining the historic bogs and springs on its property," expending $100,000 to do so, and because the Defendants have demanded that TNC drain and destroy the bogs, which would deprive TNC of the $100,000 and in essence the value of its property considering the purpose of purchase, these amounts should be included in the amount in controversy. In addition, TNC contends that because the TCPA allows a plaintiff to recover attorney's fees and because the Sixth Circuit has held that attorney's fees under state statutes are to be considered in determining the amount in controversy, the Plaintiff has met the required amount in controversy.

As set out earlier in more detail, the complaint states that the amount in controversy exceeds $75,000.00, that TNC paid $1.7 million for ten parcels of land, that Plaintiffs have been damaged by a violation of the TCPA "in an amount to be

shown at trial," and that "Defendants' negligence per se has proximately caused Plaintiff harm for which Defendants are liable in an amount to be proven at trial." The complaint further alleges that in the March 12, 2007 letter the "District board of directors" demanded that TNC "immediately unblock" all laterals and stated that the District would inspect the TNC's property for compliance by May 12, 2007.

Regarding the declaratory judgment action's amount in controversy, the complaint states the price paid for the property and that the Plaintiff knew of the easements before purchasing the property. The Plaintiff argues that it has spent $100,000.00 in restoring bogs on the property, that this restoration is the purpose for purchasing the property, and that the defendants have demanded that the plaintiff destroy the bogs. This specific amount is outside of the pleadings; however, it is clear from the complaint that the reason for purchasing the property was to restore and maintain bogs and wetlands on its property, which apparently it has done, and that Defendant Gentry, writing the March 12, 2007 letter on behalf of the District's "board of directors," demanded TNC unblock laterals, which would allegedly destroy TNC's bogs and wetlands.

TNC is seeking a declaratory judgment that the District has been dissolved and that the District's easements are extinguished in an effort to protect its property's bogs and wetlands from destruction. Although the entire value of TNC's property would not be lost from the destruction of the bogs and wetlands, its $1.7 million value would

be greatly diminished from Plaintiff's perspective. Moreover, because the amount in controversy is determined from "the value of the consequences which may result from the litigation," *LoDal*, 1998 WL 393766, at *2, that is, destruction of the bogs and wetlands, this Court FINDS that the Plaintiff has demonstrated by a preponderance of the evidence that the amount in controversy is met.[4]

III. STANDING

Citing *City of Fairview v. Spears*, 359 S.W.2d 824 (Tenn. 1962), the Defendants assert that the District is a "quasi-governmental" corporation and that TNC, as a "private citizen," cannot attack its corporate existence. They further contend that the corporate existence of a quasi-governmental corporation may only be challenged by the state in a *quo warranto* action. *See id.*; *see also*, T.C.A. § 29-35-101 (2008). Thus, the Defendants claim that the Plaintiff lacks standing to sue on the declaratory judgment and quiet title claims.

First, the Plaintiff claims, "*[q]uo warranto* is not the exclusive remedy when a challenge to corporate legality is merely a causal[5] issue in a case involving the enforcement solely of private rights which do not relate to questions of public interest." Plaintiff's Response, [Doc. 40], citing 74 C.J.S. *Quo Warranto* § 9. The

---

[4]The Defendants' arguments regarding the damages alleged in the TCPA and negligence per se claims is addressed below.

[5]The Plaintiff misquotes the source. "Causal" is actually "casual." *See* 74 C.J.S. *Quo Warranto* § 9.

Plaintiff states that the challenge to the District's corporate legality is casual because it is not "the ultimate issue in a lawsuit involving clouds on title to [TNC's] land." Second, the Plaintiff argues that *quo warranto* is not an adequate remedy because, in essence, it would not address the validity of the District's easements. Third, the Plaintiff reiterates that *quo warranto* cannot be invoked for the redress of private rights.

The Defendants' argument that the Plaintiff lacks standing because the suit must be brought in *quo warranto* presumes that *quo warranto* proceedings provide an adequate and exclusive remedy. The Defendants' claim ignores the insufficiency of *quo warranto* proceedings. "[Q]*uo warranto* is not an exclusive remedy unless it is adequate." *Lapides v. Doner*, 248 F. Supp. 883, 897 (E.D. Mich. 1965); *see also*, *Earhart v. City of Bristol*, 970 S.W.2d 948, 952 (Tenn. 1998) ("But if *quo warranto* is not an adequate remedy, it will not be a bar to alternative remedies."). The Plaintiff claims that the lawsuit seeks "to remove the cloud of the . . . District's easements from title of land [it] currently owns." This Court notes that in reaching the merits of this claim, it must determine the corporate existence of the District. However, a *quo warranto* action by the state would not provide an adequate remedy for the Plaintiff's ultimate claims, the easement and quiet title claims, because if the state brought such action, then the suit would only decide the District's existence. *See Lapides*, 248 F. Supp. at 897. Such a suit by the state would not litigate the validity of any easements

or quiet the title of TNC's property. Moreover, a *quo warranto* action would not address the successor rights of the unformed District, if any, in the easements.

Furthermore, the issue of standing is a procedural matter and not a matter of state substantive law binding on this Court. *See id.* Thus, this question is governed by Federal Rule of Civil Procedure 17(a), not state substantive law. *See id.* Here, the Plaintiff, as the aggrieved party, is the "real party in interest"; accordingly, this Court FINDS that TNC has standing to sue under Rule 17(a). *See* Fed. R. Civ. P. 17(a).

Even if this Court looked to Tennessee substantive law to determine whether the Plaintiff had standing, this Court would reach the same conclusion. The Tennessee Supreme Court stated in *Earhart v. City of Bristol* that "if *quo warranto* is not an adequate remedy, it will not be a bar to alternative remedies." 970 S.W.2d at 952 (quoting 65 Am.Jur.2d *Quo Warranto* § 7 (1972)) (stating that the Tennessee Declaratory Judgment Act was another law that adequately addressed the plaintiffs' claims).

The Defendants rely on *City of Fairview v. Spears*, 359 S.W.2d 824 (Tenn. 1962), and *Jordan v. Knox County*, 213 S.W.3d 751 (Tenn. 2006), for the assertion that *quo warranto* is the only action available to challenge the existence of a quasi-governmental corporation. The Defendants further contend that *Earhart* does not apply because it involved an annexation statute which did not allow the plaintiffs to

bring a *quo warranto* action as they did not own the property that was annexed.[6] The Defendants state, "*Earhart* clearly applies to those very limited situations involving annexation that do not include people, private property, or commercial activity." However, *City of Fairview* and *Jordan* are distinguishable from the case at hand, and again, the Defendants presuppose that *quo warranto* is an adequate remedy, dismissing the fact that *quo warranto* would only resolve an incidental issue, not adjudicating the Plaintiff's ultimate claim, the validity of the easements and any successor rights.

First, in *City of Fairview*, private citizens brought the action purely to void the city charter; this was the ultimate issue. 359 S.W.2d at 405. The basis of their claim was that statutory procedures were not followed during incorporation. *Id*. at 406. The Supreme Court stated, "In cases of *purely public concern* and in actions for *wrongs against the public*, whether actually committed or only apprehended, the remedy, . . . is as general rule by a prosecution instituted by the state." *Id*. at 411-12 (citations omitted) (emphasis added). The court went on to say that this is the action for courts to take "to redress a public wrong." *Id*. at 412. Here, however, the action is a private concern to address an alleged wrong against a private individual. As such,

---

[6]The Defendants also claim that the Plaintiff's reliance on *Summers v. Town of Walnut Grove*, 2001 WL 434867 (Tenn. Ct. App. 2001), is misplaced. This Court agrees that *Summers* is not applicable because the statute that enabled the formation the city, whose corporate existence was being challenged by private citizens, was declared unconstitutional prior to the filing of the lawsuit. *Id*. at *2.

*quo warranto* would not provide an adequate remedy.

Second, in *Jordan*, incumbent county commissioners brought suit seeking a declaratory judgment that the Knox County Charter was null and void because Knox County did not properly adopt a charter form of government in 1990, thus, rendering the term-limit provisions which amended the charter in 1995 ineffective, thereby allowing the incumbents to keep their elected positions. 213 S.W.3d at 760. The plaintiffs did not challenge the legal existence of Knox County. Had the state brought the action in *quo warranto* challenging the legal existence of Knox County, the remedy would have been inadequate. A *quo warranto* action would not have adjudicated the plaintiffs' ultimate issue, the right to avoid term limits and hold their elected positions. For the reasons stated above, this Court would FIND even under Tennessee substantive law that the Plaintiff has standing to bring the suit.

IV. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

   A. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867 (1990). The Court may not grant such a motion to dismiss based upon a disbelief

of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id*. (citations omitted).

B.  Tennessee Consumer Protection Act Claim

The Defendants argue that Plaintiff fails to allege in its complaint any fact that it is a consumer who purchased its property from the District, that it sought to acquire the District services, or that the District was involved in "trade or commerce" in that it advertised, offered for sale, or distributed any goods, services, or property. Furthermore, the Defendants contend that the Plaintiff is required by T.C.A. § 47-18-109(a)(1) to allege "an ascertainable loss of money or property." Finally, the defendants claim that this Court should award them reasonable attorney's fees and costs because of T.C.A. § 47-18-109(e)'s cost shifting clause.

The Plaintiff argues that the Defendants attempt to place a stricter pleading burden upon it, that it is a consumer of real property, that the engagement in "'unfair or deceptive'" acts is a question of fact not appropriate for adjudication on a motion

to dismiss, and that the "ascertainable loss" is attorney's fees. For the reasons set forth below, even under the Plaintiff's claimed pleading burden, the Plaintiff has failed to state a claim pursuant to the TCPA upon which relief can be granted; thus, this count is hereby **DISMISSED**.

The TCPA promotes certain policies which among other things protect "consumers" "from those who engage in unfair or deceptive acts or practices in the conduct of trade or commerce." T.C.A. § 47-18-102(2) (2008). The Act defines consumer and trade, commerce or consumer transaction as follows:

> . . . .
> (2) "Consumer" means any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated or any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity; [and]
> . . . .
> (11) "Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated.

*Id*. §47-18-103(2), (11). Moreover, the TCPA refers to unfair or deceptive acts or practices which "affect[] the conduct of any trade or commerce" in T.C.A. § 47-18-104. *Id*. § 47-18-104. Although the acts are not limited to those enumerated in section 104, they are limited to trade or commerce. In addition, the act requires "an

15

ascertainable loss of money or property, . . . or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part." *See id.* § 47-18-109(a)(1).

The Plaintiff does plead that it is a consumer of "real property"; however, it fails to plead that it is a consumer with respect to the Defendants. Similarly, the complain fails to allege that the Defendants were or are engaged in trade or commerce. Further, the complaint fails to allege what act or acts committed by the defendants were unfair and deceptive under the TCPA. Although it is generally a question of fact for the trier of fact to determine whether the act of the defendant is unfair or deceptive, the Plaintiff must at least allege an act or acts falling under the TCPA. *See* T.P.I.–Civil 11.45 (7th ed., 2007).

Finally, the Plaintiff states that it has been damaged "in an amount to be shown at trial." This is clearly insufficient on its face. The Plaintiff does, however, argue in its Response to Defendants' Motion to Dismiss, which is outside the pleadings, that the actual loss is attorney's fees, allowed under the Act. *See* T.C.A. § 47-18-109(e)(1) (2008). The Act does allow attorney's fees "[u]pon a finding by the court that a provision of [the Act] has been violated. *Id.* Nevertheless, the Plaintiff failed to plead any actual damages, including attorney's fees.

In no scenario can this Court fathom, based on the facts alleged in the

complaint, how the TCPA applies in this case, much less how the Defendants could have violated the TCPA. *See Wagner v. Fleming*, 139 S.W.3d 295, 300-01 (Tenn. Ct. App. 2004) (holding that the TCPA does not apply to Defendants who were seeking to buy real property from the Plaintiff at auction). Because the complaint does not contain either direct or inferential allegations respecting all the necessary material elements of a claim pursuant to the TCPA, this count is hereby **DISMISSED**.[7]

As stated earlier, the Defendants argue that they should be awarded reasonable attorney's fees and costs because this action in essence was "frivolous, without legal or factual merit, or brought for the purpose of harassment." T.C.A. § 47-18-109(e)(1). This Court FINDS also that this action was without legal merit, and as such, it is hereby **ORDERED** that the Plaintiff pay the Defendants' reasonable attorney's fees and costs as to this cause only; however, this Court reserves its decision regarding the actual amount until the conclusion of the case.

C. Negligence Per Se Claim

Defendants argue that 1) Plaintiff fails to cite a statute that was violated; 2) there is no intent to misrepresent because no judicial determination has been made as to the District's status; and 3) Plaintiff fails to allege any injury or damages. The Plaintiff argues that a violation of the criminal impersonation statute, T.C.A. § 39-16-

---

[7]Because of this dismissal, this Court need not address Defendants' argument whether this count is barred by the Tennessee Governmental Tort Liability Act ("GTLA").

301,[8] amounts to negligence *per se*. Moreover, it contends that if this Court determines that the District is dissolved, then the individual defendants violated the criminal impersonation statute, amounting to negligence *per se*, when they portrayed themselves as officers of the District, a quasi-governmental entity.

In order to recover on a theory of negligence *per se*, a plaintiff must prove that a defendant violated a statute or ordinance and that this violation was the legal cause of the plaintiff's injury or damage. *See Bennett v. Putnam County*, 47 S.W.3d 438 (Tenn. App. 2000). In the complaint regarding damages claimed in the negligence per se claim, the Plaintiff states, "Defendants' negligence per se has proximately caused Plaintiff harm for which Defendants are liable in an amount to be proven at trial." This is insufficient, and again, because the Plaintiff failed to plead allegations respecting all the material elements of its claim, this count is likewise **DISMISSED**.[9]

V. CONCLUSION

It is **ORDERED** that the Defendants' Motion to Dismiss, [Doc. 32], is **DENIED** in part and **GRANTED** in part. Because the amount in controversy is met, the Defendants' motion to dismiss on jurisdictional grounds is **DENIED**. Furthermore, this Court **FINDS** that the Plaintiff has standing to sue. Defendants' Motion to

---

[8]Plaintiff admits that it made a typographical error in the complaint, and because of this error, it cited a statute not actually contained in the T.C.A.

[9]Again, because of this dismissal, this Court need not address Defendants' argument whether the this count is barred by the GTLA.

Dismiss the TCPA and negligence *per se* claims is **GRANTED**. It is also hereby **ORDERED** that the Plaintiff pay the Defendants' reasonable attorney's fees and costs as to the TCPA cause only, the amount of which to be determined at a later date.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE